IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATAI KING,             : | |
|      Plaintiff,      : | |
| : | |
| v.                     : | Civ. No. 15-2270 |
| : | |
| U.S. XPRESS, INC., et al., : | |
|      Defendants.    : | |
| : | |

**Diamond, J.**                                                                                   **September 1, 2016**

**MEMORANDUM**

    Fatai King brings suit against U.S. Xpress, Inc. and Mountain Lake Risk Retention Group, Inc., claiming third-party uninsured motorist benefits under a Mountain Lake commercial policy issued to Xpress. Defendants move for summary judgment, arguing that Xpress validly rejected uninsured motorist coverage under Pennsylvania law. See 75 Pa. C. S. § 1731(b). Plaintiff responds that the rejection is void because it included language in addition to the statutorily prescribed text. Id. § 1731(c.1). Because I conclude the added language only clarified Xpress's rejection of uninsured motorist benefits, it did not invalidate the rejection. Accordingly, I will grant Defendants' Motion for Summary Judgment.

**I.     Background**

    I have construed the facts (which are largely undisputed) and resolved those few material factual disputes in Plaintiff's favor.

    In 2012, Xpress, a Tennessee trucking company that regularly operates in Pennsylvania, employed Plaintiff as a driver. (Compl., Doc No. 1, Ex. A, ¶ 2; Notice of Removal, Doc. No. 1, ¶ 6; Defendants' Second Motion for Summary Judgment, Doc. No. 28, ("Defs. SOF") ¶ 2; Plaintiff's Opposition, Doc. No. 29, ("Pl. SOF") ¶ 2.) On November 3, 2012, while at work

driving an Xpress truck that had been garaged in Pennsylvania, Plaintiff was injured in Nebraska when he collided with another truck that was never located or identified. (Compl. ¶¶ 4-5; Defs. SOF ¶¶ 1-2, 4; Pl. SOF ¶¶ 1-2, 4.) At the time of the collision, Mountain Lake, a Vermont insurance company that also regularly conducts business in Pennsylvania, provided coverage to Xpress under a Truckers Automobile Liability insurance policy. (Compl. ¶ 3; Notice of Removal ¶ 7; Defs. SOF ¶ 5; Pl. SOF ¶ 5.)

Plaintiff, who resides in this District, made a claim under the Policy for uninsured motorist benefits to cover his collision-related injuries. (Compl. ¶ 1; Defs. SOF ¶ 6; Pl. SOF ¶ 6.) Pennsylvania's Motor Vehicle Financial Responsibility Law governs both uninsured and underinsured coverage. See 75 Pa. C. S. §§ 1701, *et seq*. Innocent insureds injured by uninsured, unidentified, or underinsured drivers and vehicles may seek uninsured and underinsured benefits from their insurers. (Defs. SOF ¶ 25; Pl. SOF ¶ 25.); see also 75 Pa. C. S. § 1702 (definition of "uninsured motor vehicle"). In such circumstances, the insurer will pay its insured's claim up to the policy limits. The MVFRL requires insurers to offer both uninsured and underinsured coverage for all policies delivered in Pennsylvania "with respect to any motor vehicle . . . principally garaged" in Pennsylvania. 75 Pa. C. S. § 1731(a). Both uninsured and underinsured coverage are optional, however: the insured may choose not to purchase either or both. Id. § 1731(a)-(c).

When it bought the Mountain Lake Policy, Xpress, through its Vice President of Risk Management Leigh Anne Battersby, executed a "Rejection of Uninsured Motorist Protection" form. (Defs. SOF ¶ 7; Pl. SOF ¶ 7; Battersby Aff., Doc. No. 28-4, ¶ 7 & Ex. A.) Relying on this Rejection Form, Mountain Lake denied Plaintiff's claim for uninsured motorist benefits because his employer, Xpress, had not purchased uninsured coverage. (Defs. SOF ¶ 16; Pl. SOF ¶ 16.)

Plaintiff, who is represented by counsel, brought suit against Defendants in the Philadelphia Common Pleas Court. Plaintiff's three-count Complaint is inartfully drafted. Although the first count includes allegations respecting the mystery driver's negligence, it concludes as follows: "As a result of then [sic] being improper rejection of Uninsured Motorist Protection Benefits under Pennsylvania Law, [Xpress] and/or [Mountain Lake] must provide such benefits up to the limit of the liability coverage in place at all times relevant." (Compl. ¶ 19.) Count two (which is captioned as a breach of contract claim) includes allegations that the failure to provide uninsured coverage breached the Mountain Lake Policy. (Compl. ¶¶ 24, 27.) Count three includes a claim for bad faith denial of uninsured coverage. 42 Pa. C. S. § 8371. After Defendants removed to this Court, the Parties stipulated to the dismissal of the bad faith claim. (Doc. Nos. 1, 12.) I have construed the remaining two counts as together making out a breach of contract claim. Relying on the Rejection Form, Defendants immediately moved for summary judgment on that claim. (Doc. No. 11.) I denied Defendants' Motion without prejudice, noting that the Form's validity could be better determined with a "developed record." (Doc. No. 20, at 2.)

Having completed discovery, Defendants again move for summary judgment on the breach of contract claim. (Doc. No. 28.)

**II.     Legal Standards**

I may grant summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially show the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the result of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). I "must view the

facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If I then determine that there is no genuine issue of material fact, summary judgment is appropriate. Celotex, 477 U.S. at 322.

"A federal court sitting in diversity must apply state substantive law." Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000). In a footnote, Defendants insist that they "do not intend to waive" their contention that "Pennsylvania law does not apply," yet Defendants do not indicate which state's law should apply; nor do they offer any conflict of law analysis. (Defs. Br., Doc. No. 28-1, at 6 n.3.) On the contrary, like Plaintiff, Defendants address the validity of Xpress's uninsured coverage rejection under Pennsylvania law alone. (Defs. Br. at 4-12; Pl. Br., Doc. No. 29-2, at 2-10.) In these circumstances, Defendants certainly have waived any contention that I should apply the law of another, undisclosed jurisdiction. See Austin Powder Co. v. Popple Const. Inc., 167 F. App'x 931, 934 n.1 (3d Cir. 2006) (where "parties have not addressed what law applies" and "cite only Third Circuit and Pennsylvania cases," court may assume that Pennsylvania law applies without undertaking choice of law analysis); Sheppard v. CBS Corp., 2013 WL 9796600, at *1 (E.D. Pa. Nov. 20, 2013) (applying Pennsylvania law where the "parties agree that Pennsylvania law applies to Plaintiff's claims against Defendant"); John Wyeth & Bro. v. CIGNA Intern. Corp., 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (contentions raised in footnotes but not otherwise argued are waived). Moreover, it is undisputed that Plaintiff resides in this District, that Defendants regularly conduct business in Pennsylvania, that Xpress garaged its truck in the Commonwealth before the November 3 collision, and that Defendants crafted an uninsured rejection form that includes all text required by Pennsylvania law. In these circumstances, Pennsylvania law appropriately governs this dispute.

Hammersmith v. TIG Ins. Co., 480 F.3d 220, 228 (3d Cir. 2007) (applying state interest choice of law analysis to insurance coverage dispute); Budtel Assocs. LP v. Cont'l Cas. Co., 915 A.2d 640, 643-44 (Pa. Super. 2006) (same); Douglas v. Discover Prop. & Cas. Ins. Co., 810 F. Supp. 2d 724, 731 (M.D. Pa. 2011) (applying Pennsylvania law to determine validity of uninsured coverage waiver even though policy was delivered to corporate insured in Illinois).

### III.  Discussion

Defendants argue that because Xpress validly waived uninsured coverage, Mountain Lake was not obligated to provide uninsured motorist benefits to Plaintiff.  I agree.

Once again, the MVFRL permits waiver of uninsured coverage with the prescribed written rejection form:

> By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household.  Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.  I knowingly and voluntarily reject this coverage.

75 Pa. C. S. § 1731(b); see also id. § 1731(c) (prescribing virtually identical language to waive underinsured benefits).  The MVFRL further provides that "[a]ny rejection form that does not *specifically comply* with this section is void."  Id. § 1731(c.1) (emphasis added).

The Rejection Form executed by Xpress includes all the language required by statute and adds two clauses:

> By signing this waiver I am rejecting uninsured motorist coverage under this policy for myself and all relatives residing in my household ***and all persons driving or working under the authority of any named insured or riding as a passenger in an insured vehicle***.  Uninsured coverage protects me and relatives residing in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.  I knowingly and voluntarily reject this coverage ***for all insured drivers, and I act on full authority of all insureds under this commercial auto policy***.

(Battersby Aff., Doc. No. 29-4, Ex. A, at 2.) (emphasis added).

> Plaintiff argues that this Form does not "specifically comply" with § 1731(b):
>
> This additional, extraneous and violative confusing language renders defendants' rejection form null and void.

(Pl. Br. at 8.)  Although I agree with Plaintiff that any uninsured waiver is void unless it "specifically complies" with § 1731(b), I disagree with Plaintiff's characterization of Mountain Lake's Rejection Form.

It is apparent that § 1731(b)'s prescribed language contemplates an individual insured rejecting uninsured coverage for herself and her family.  75 Pa. C. S. § 1731(b) ("I am rejecting [uninsured] coverage . . . for myself and all relatives residing in my household.").  Such language is obviously inadequate when the insured is a corporate entity—like Xpress—seeking to reject uninsured commercial coverage.  Rather than delete required but inapplicable text, Xpress simply added language confirming that the insured rejecting coverage was a business, not an individual.  (Battersby Aff., Ex. A, at 2 ("[A]nd all persons driving or working under the authority of any named insured or riding as a passenger in an insured vehicle").)  Xpress thus argues that the Waiver Form specifically complied with the MVFRL.  I agree.

Although the MVFRL does not define "specific[] compl[iance]," the case law makes clear that a waiver may "specifically comply" with the MVFRL even if it adds language to the prescribed text.  Courts consider whether that added language "introduce[s] ambiguity into the rejection form," "change[s] the meaning or scope of the coverage," or "contravene[s] any party's understanding of the intended coverage."  Robinson v. Travelers Indem. Co., 520 F. App'x 85, 88-89 (3d Cir. 2013); see also Vinh Thanh Ho v. Allstate Indem. Co., 615 F. App'x 94, 96 (3d Cir. 2015).  Courts also consider both the "placement of the [added] language" and whether it "pertains[s] to the rejection of [uninsured coverage.]"  Vinh Thanh Ho, 30 F. Supp. 3d 361, 367 (E.D. Pa. 2014), aff'd 615 F. App'x 94 (3d Cir. 2015).

Case law respecting the rejection of underinsured benefits (which, as I have described, may be effected with a form virtually identical to that waiving uninsured benefits) is apposite here.  In Robinson, the Third Circuit held that an underinsured motorist coverage rejection form adding the word "motorists"—i.e., "Underinsured *Motorists* Coverage protects me and relatives living in my household for losses and damages"—specifically complied with the MVFRL because it did not create any ambiguity.  520 F. App'x at 88; see also 75 Pa. C. S. § 1731(c).  Similarly, in Vinh Thanh Ho, the addition of the phrase "[i]f you desire to reject this coverage entirely, you must sign the waiver below" did not create ambiguity, but rather "clarifie[d] and emphasize[d] the gravity of the decision to waive underinsured motorist coverage."  615 F. App'x at 96; see also Ford v. Am. States Ins. Co., 2015 WL 9596644 (Pa. Super. Dec. 30, 2015), allocatur granted 137 A.3d 537 (Pa. 2016) (insured validly waived underinsured benefits where, as in Robinson, the waiver added the word "motorists" to the second sentence); Watson v. Am. Nat. Prop. & Cas. Co., 2015 WL 5311311, at *5 (W.D. Pa. Sept. 11, 2015) (same); Unitrin Auto & Home Ins. Co. v. Heister, 2005 WL 2314372, at *4 (M.D. Pa. Sept. 22, 2005) (additional waiver language specifically complied where it "was surely designed to aid the insured in understanding his policy, an otherwise esoteric and complicated document for the lay reader to comprehend").

As I have discussed, Pennsylvania law permits the "named insured" to reject uninsured motorist coverage.  That rejection will bind all beneficiaries to the policy.  75 Pa. C. S. § 1731(b); Been v. Empire Fire & Marine Ins. Co., 751 A.2d 238, 240 (Pa. Super. 2000).  Courts have voided waiver forms only where they omitted prescribed text and so created an ambiguity respecting the waiver.  American Int'l Ins. Co. v. Vaxmonsky, 916 A.2d 1106, 1109 (Pa. Super. 2006); Douglas v. Discover Prop. & Cas. Inc., 2013 WL 5595957, at * 3 (M.D. Pa. Oct. 10,

2013).  The courts' concern for clarity underscores the importance of an insured's decision to forego uninsured and underinsured coverage.  See Jones v. Unitrin Auto & Home Ins. Co., 40 A.3d 125, 130 (Pa. Super. 2012) (noting "importance of the rights at stake" when considering waiver of coverage).

The Mountain Lake Form adds language that Xpress' rejection of uninsured coverage extends to all its employees and its insured drivers.  These additions enhance the clarity of the waiver.  Indeed, as I have discussed, because the Mountain Lake Policy is commercial (not individual), the waiver could neither be effected nor make sense without the added language.  The added language is thus not only permissible, it is essential if Xpress is to exercise its right under the MVFRL to reject uninsured coverage for its employees and drivers.

The decisions Plaintiff relies upon are inapposite.  In Jones, the challenged waiver form included the phrase "By rejecting this coverage, I am also signing the waiver . . . rejecting stacked limits of underinsured motorist coverage"—language that "did not pertain to the rejection" of uninsured coverage.  40 A.3d. 125 at 128; Robinson, 520 F. App'x at 89.  The Superior Court ruled that the insertion of this language voided the underinsured motorist coverage waiver because it interfered with the "proximal relationship between the required language and the required signature and date lines following the language."  Jones, 40 A.3d at 129.  Plainly, that is not the case here.  The language added to the Mountain Lake waiver did not introduce a new subject that might confuse the reader as to the precise nature of the waiver; on the contrary, it related exclusively to the rejection of uninsured motorist coverage.

Plaintiff also relies heavily on Grassetti v. Property and Casualty Insurance Co. 2011 WL 1522326 (M.D. Pa. Apr. 20, 2011).  The Grassetti Court held that the inclusion of the word "Motorists" in the second sentence of the required text voided the uninsured coverage waiver.

Id. at *4.  Grassetti cannot be reconciled with the Third Circuit's subsequent decision in Robinson or the Pennsylvania Superior Court's subsequent decision in Ford, where underinsured waiver forms otherwise identical to the one at issue in Grassetti were deemed valid.  Robinson, 520 F. App'x at 88; Ford, 2015 WL 9596644 (Pa. Super. Dec. 30, 2015).  In these circumstances it is apparent that Grassetti is no longer a correct statement of Pennsylvania law.

Finally, Xpress and Mountain Lake (not Plaintiff) negotiated both the coverage to be provided and the premium to be paid for that coverage.  (See Battersby Aff. ¶ 6); see also Vin Thanh Ho, 30 F. Supp. 3d at 367 ("Plaintiff cannot escape the fact that he elected to forego [underinsured motorist] coverage in exchange for lower premiums.").  Unlike an individual who waives uninsured coverage, Xpress is a sophisticated business that can be presumed to understand "an otherwise esoteric and complicated document" which could be difficult "for the lay reader to comprehend."  Unitrin, 2005 WL 2314372, at *4.  It would be inequitable in these circumstances to compel Mountain Lake to provide uninsured motorist benefits for which Xpress never paid.  See Adamitis v. Erie Ins. Exchange, 54 A.3d 371, 376 (Pa. Super. 2012) ("[T]here is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." (quoting Hall v. Amica Mut. Ins. Co., 648 A.2d 755, 761 (Pa. Super 2004))).

**IV.     Conclusion**

In sum, it is evident that Defendants did not provide Plaintiff with uninsured motorist benefits because Xpress validly waived such coverage. Accordingly, I will grant summary judgment in Defendants' favor on Plaintiff's remaining claim for breach of contract.

An appropriate Order follows.

*/s/ Paul S. Diamond*

_____

September 1, 2016                                                                      Paul S. Diamond, J.